UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. LAWRENCE J. O'NEILL

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>IANE LOVAN, VONG SOUTHY, SOMPHANE MALATHONG, KHAMPHOU KHOUTHONG, SUPHAN SAISEE,<br>Defendants. | 1:13-cr-294 LJO<br>MOTION TO DISMISS |

Fresno, California Monday, March 9, 2015

REPORTER'S TRANSCRIPT OF PROCEEDINGS

REPORTED BY: PEGGY J. CRAWFORD, RDR, CRR, Official Reporter

APPEARANCES OF COUNSEL:


For the Government:

**KEVIN P. ROONEY**
Assistant U.S. Attorney
2500 Tulare Street, Rm. 4401
Fresno, California 93721

For the Defendants:

(Lovan)

FEDERAL DEFENDER'S OFFICE
2300 Tulare Street
Suite 330
Fresno, CA 93721
BY: **ANDRAS FARKAS**
Assistant Federal Defender

(Southy)

LAW OFFICES OF HARRY M. DRANDELL
1221 Van Ness Avenue
Suite 450
Fresno, CA 93721
BY: **HARRY M. DRANDELL**

(Malathong)

DANIEL L. HARRALSON
LAW CORPORATION
Post Office Box 26688
Fresno, CA 93729
BY: **DANIEL L. HARRALSON**

(Khouthong)

WANGER JONES HELSLEY PC
265 E. River Park Circle
Suite 310
P.O. Box 28340
Fresno, CA 93729
BY: **PETER M. JONES**

(Saisee)

CAROL MOSES
Attorney At Law
575 E. Alluvial, Suite 105
Fresno, CA 93720
BY: **CAROL MOSES**

Monday, March 9, 2015 Fresno, California
10:10 a.m.

(Language Skilled Interpreter Chi Ya, Oath on file, was on standby for assistance in the Hmong Language.)

THE COURT: Let's call the case of United States versus Lovan, Southy, Malathong and Saisee, Action Number 294.

MR. FARKAS: Good morning, your Honor. Andras Farkas on behalf of Mr. Lovan, who is not present pursuant to a Rule 43 waiver.

MR. DRANDELL: Good morning, your Honor. Harry Drandell on behalf of Vong Southy, and he is not present pursuant to a Rule 43 waiver.

MS. MOSES: Good morning, your Honor. Carol Moses on behalf of Suphan Saisee, who is not present pursuant to a Rule 43 waiver.

MR. JONES: Peter Jones for Kamphou Khouthong. He is not on calendar, but I did file a motion for joinder.

THE COURT: He should be, because I agree with you.

MR. JONES: Okay, thank you. He is not present. He is in Hawaii.

MR. HARRALSON: Your Honor, Dan Harralson on behalf of Somphane Malathong, who is present in court out of custody.

MR. ROONEY: Kevin Rooney on behalf of the United States.

THE COURT: We are going forward with this motion?

MR. FARKAS: Yes, your Honor.

THE COURT: Everybody agrees?

Okay. This is the defendant's motion brought by Defendant Lovan, and joined by all other defendants. It is a motion to dismiss the indictment under Rule 12 of the Federal Rules of Criminal Procedure, also the Fifth and Tenth Amendments.

I think it is probably more efficient if I go through and indicate what I have read, reviewed, how I view the facts, how I view the law, give you a tentative ruling, and then if you wish to be heard, you can. Fair enough?

MR. FARKAS: Yes.

THE COURT: We know that July 16th of 2013, there was a federal search warrant that was executed in the or on the 60 acres located in Sanger on Zedicker, Z-e-d-i-c-k-e-r.

I believe that based on the -- that which has been argued, that which has been provided, that the location had more than 30,000 marijuana plants on it.

Apparently, upon attempted execution of the search warrant, Defendant Lovan tried to hide, and approximately ten feet away from where he tried to hide in the field, there was a 9 millimeter gun in a plastic bag and a shirt that were found.

Mr. Lovan, at the time had his California Health and Safety Code medical marijuana card with him, which nobody is

claiming was invalid.

The Court is aware that there was recently passed Consolidated and Further Continuing Appropriations Act precluding funds to prosecute.

This case is the allegation; in other words, that's one of the two bases upon which the motion is made. The second is that the marijuana's designation as a Schedule I controlled substance is arbitrary, and violates the Fifth Amendment due process.

The Court -- the tentative on the latter of the two; in other words, the designation of marijuana as a Schedule I controlled substance, the Court finds that it has no power to act to reclassify marijuana or to reschedule designation of marijuana, and it's by the express terms of Title 21 of the United States Code section 877. I don't think that the language of that is in any way equivocal.

With regard to the other issue, the first, number one, in the documents before me, as I said, there is no dispute argued that under the alleged facts, the case, pursuant to the indictment language, involved more than a thousand marijuana plants per the indictment. And under the points and authorities, we are talking about 30 times that found in the 60 acres.

And I don't think there is any question, nor there was any argument, that the two counts in the indictment, both

under 21 United States Code section 841(a)(1) and 846, both allege unlawful activity pursuant to those Code sections.

I also don't think that it is disputed in any way that Defendant Lovan, not the other defendants, but Lovan, had a medical marijuana prescription, and it was Exhibit A to the defendant's motion, allowing 99 marijuana plants.

And that included a clause within that prescription that was incorporated in the argument that, and I will use the language of the prescription, that the prescription itself was, "void if misused."

In looking at California Health and Safety Code section 11362.5, that's entitled the, "Compassionate Use Act of 1996," in 11362.5(b)(2), it says:

"Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes."

Also, under 11362.5(d), it states:

"Section 11357, relating to the possession of marijuana and section 11358, relating to the cultivation of marijuana, shall not apply to a patient or to a patient's primary caregiver," which that second clause there is not applicable here, "who possesses or cultivates marijuana for the purpose" --

excuse me, "for the personal medical purposes of the patient upon a written or oral approval of a physician."

And as I said, here the physician approved 99 plants.

In looking at Public Law 113-235, which has been referred to in the arguments here as section 538, in pertinent parts it states:

"None of the funds made available in this Act to the Department of Justice may be used with respect to California to prevent such states from implementing their own state laws that authorize the use, distribution, possession, or cultivation of medical marijuana," end of quote.

In this particular case, by the allegations in the indictment, the facts go well beyond the medical marijuana prescription to Defendant Lovan; that is, 99 plants prescribed to him.

In this case, the allegation is not 99 plants or fewer, but is more than a thousand. And factually, if not 30,000, but at least the more than a thousand were alleged.

The allegations themselves and, therefore, the prosecution itself, does not insult or contradict or prevent implementation of California Health and Safety Code 11362.5. Rather, the indictment is, frankly, consistent with the language in 11362.5(b)(2) and (d).

Therefore, the tentative is to deny the motion.

Mr. Farkas?

MR. FARKAS: Thank you, your Honor.

It is our position that it would be a mistake to rely on the indictment in this case. The indictment is essentially what the government presented to the Grand Jury. I wasn't there, Mr. Lovan didn't testify.

It is our contention that he didn't have a thousand plants, that he had plants that were consistent with his medical marijuana recommendation.

THE COURT: Well, wait a minute. How could I possibly do that? This is a motion to dismiss the indictment? I have to rely on the indictment.

MR. FARKAS: But, your Honor, I think the language of section 538 gives this Court that power.

THE COURT: What power?

MR. FARKAS: The power to review whether this prosecution violates -- whether Mr. Lovan was actually in conformity with California's medical marijuana laws.

THE COURT: Well, I agree with that, except that what else do I have before me other than the allegations in the indictment to make that determination?

MR. FARKAS: And that's why we are asking for an evidentiary hearing, your Honor. We would have people, including Mr. Lovan, come and testify that as to the number of

plants he possessed, as to how many people were there growing medical marijuana along with Mr. Lovan.

And then the government could make their case, that he possessed over a thousand plants, 30,000 plants, whatever their contentions are.

And at that point, then this Court could decide whether he is actually in conformity with California medical marijuana statute and, if he is, then this prosecution could not go forward.

THE COURT: Why would this not be more appropriate to be a posttrial motion after there are factual findings made by a trier of fact?

MR. FARKAS: Because, your Honor, I have sort of likened this to a double jeopardy type of situation, where Mr. Lovan has a right not to be tried on this case. He has a right not to have the Department of Justice by the very plain language of this amendment to not have any funds spent on his prosecution if he is in conformity with California's medical Compassionate Use Act.

THE COURT: But on the same -- in the same vein, is he entitled to, basically, two trials? Because you are basically asking me to be the trier of fact on whether or not he is guilty of that which is alleged, which is a trial.

MR. FARKAS: Your Honor, on the other hand, the alternative is allowing the Department of Justice to allege,

you know, that he is not in compliance, and to, essentially, allege that without any input from Mr. Lovan.

THE COURT: But remember, your remedy is not because you are upset that the Department of Justice is spending taxpayer money.

Your remedy is a dismissal, which is what you are seeking now, is it not?

MR. FARKAS: And your Honor, as an alternative in our motion, we ask for a stay of these proceedings, asked this Court to enjoin the Department of Justice from spending any funds to prosecute Mr. Lovan if this Court finds he is in conformity with the California Compassionate Use Act. So it is a motion to dismiss or, alternatively, a motion to enjoin until Congress designates funds for that purpose.

THE COURT: But again, the only way I could do that is to basically have two trials. I would be the trier of fact in determining whether or not he is guilty of the charges alleged.

MR. FARKAS: Your Honor, you would be determining whether he is or he is not in conformity with California's Compassionate Use Act.

THE COURT: But the only way to do that is, really, to have a trial.

MR. FARKAS: Your Honor, no. The trial would be whether he possessed over a thousand plants.

THE COURT: That's what the allegation is.

MR. FARKAS: That is the allegation, but that's the allegation of the Grand Jury.

And that's, again, to me, section 538 takes away the Department of Justice's discretion to simply present their version of the events and to have, you know, them say, "Oh, he is not in compliance."

The section 538 is very specific and the legislative history is very specific. It was meant to prevent the Department of Justice from spending funds to prevent California from implementing its medical marijuana laws.

There is no other way to do that, your Honor, aside from having an Article III judge, such as yourself, determine whether Mr. Lovan is in compliance with medical marijuana laws.

It is not up to Mr. Rooney anymore or Eric Holder. It is up to a judge to determine whether this prosecution can go forward.

THE COURT: But you agree, I think, that in this particular case, based on what the allegation is versus what the argument is to dismiss, that the only way to rule on the legal issue that you have brought is necessarily for me to make a finding of guilt or innocence.

MR. FARKAS: Your Honor, we are not asking for guilt or innocence. We are asking for a finding of whether

Mr. Lovan is in compliance with the Compassionate Use Act or not.

THE COURT: It is the same thing in this particular case.

MR. FARKAS: I don't believe that's the case, your Honor.

THE COURT: How could I not -- how could I not -- let me ask it a different way.

How could I grant your motion if I did not make a finding, a -- I would be the trier of fact and make a finding of guilt or innocence?

MR. FARKAS: Your Honor, we are not asking for a finding of guilt or innocence. We are asking for is he in compliance with the Compassionate Use Act.

THE COURT: That's the same thing in this case.

MR. FARKAS: To me, it is not, your Honor. We would bring in experts discussing how these types of cooperative grows are in line with what is contemplated under the Compassionate Use Act. Mr. Lovan would testify. Other people would testify that they were also growing medical marijuana.

And then your Honor would determine whether that is in compliance or if it is not in compliance.

If Mr. Lovan is in compliance, the case would go forward to a jury. If he is not in compliance, we would ask either for a dismissal or to enjoin the government from

spending any funds that were not appropriated under the Appropriations Act.

MR. ROONEY: The government has a very different view of this from either the Court or the defense. One, obviously, the government is happy if we go to trial, see where our verdict is and then --

THE COURT: But it would be more than a verdict. It would be also a finding by the trier of fact.

MR. ROONEY: Right. Right. I understand that. There would be a quantity allegation finding.

THE COURT: Right.

MR. ROONEY: One thing I want to point out, and the way the indictment is drafted is very similar to a state court special allegation.

The government's view is that notwithstanding section 538, that the Controlled Substances Act is still in effect, it is still in force and effect, and that it is illegal to cultivate marijuana. It is just regardless of the state law.

The way 538 was worded, it didn't say no funds shall be spent to prevent the states from implementing their own state laws, and they don't have another sentence, "No person shall be prosecuted."

This is directed at preventing the Department of Justice from litigating, seeking injunctions, all those kinds of things against the state.

It is not aimed at individual people. The government's position is that Mr. Lovan, with his -- the other people is not implementing the state law. He is on his own venture. It is not that kind of thing.

Obviously, the federal law covered a wide range of various state marijuana schemes, setups, and it is not specific to California.

So as we put in our points and authorities, we don't think in any way this bars the current prosecution, and whether or not the jury was to find a thousand plants, a hundred plants, which is another mandatory minimum thing under the federal law, or an unspecified number.

THE COURT: Well, it sounds to me as though your argument is what does the term "from implementing" mean.

MR. ROONEY: Correct. That's basically our argument.

THE COURT: And if -- it seems to me that section 538 is basically saying the Department of Justice may not expend any funds at all if, by expending those funds, it prevents the State of California from implementing Health and Safety Code 11362.5.

And implementing 11362.5, of what possible advantage would it be to put that type of language in there if it isn't specifically to deter the Department of Justice from doing exactly what Mr. Farkas is arguing against right now?

MR. ROONEY: I think they are driving at a different

thing. The Department of Justice is within its discretion, et cetera, in targeting what we believe to be, what the Department of Justice believes to be is an abuse of use of the medical marijuana statute.

THE COURT: And nobody is saying you can't do that. What they are saying is -- Congress is saying is you just can't spend any money to do it.

MR. ROONEY: Well, I disagree with that. I think what the Congress is saying is we can't challenge the state.

We can do things as to the individuals, that the Controlled Substances Act as it relates to marijuana has not been abrogated. They have not given the states the power to abrogate the Controlled Substances Act by issuing whatever state "paperwork," we could call it.

THE COURT: See, to me, the term "implementation" is much broader than that. And Congress certainly could have limited it or defined it more specifically if that's what they intended to do.

They used a broad term, and legislative determination and construction is, unless it is a vague term -- which I don't think anybody is saying "implementation" is vague. You are just both indicating it is something different from what the other is indicating it means.

"Implementation" is a broad term. It encompasses a great deal of activity. And one of those activities is when

California, the State of California, passes Prop. 215, and which is 11362.5 of the Health and Safety Code, when they say they want to allow medical marijuana to occur, their implementing that statute means you allow people to do it.

And by prosecuting on a federal level, obviously, you are telling the State of California you can let the people do what they want, but we are going to arrest them. We are going to prosecute them.

How is that not in the middle of implementation of that code section?

MR. ROONEY: Where the distinction -- we probably put it much more artfully in the brief than I'm going to be able to articulate it -- the distinction is where the harmonizing the two statutes. Congress passes 538. They don't say, "The Controlled Substances Act is hereby abrogated."

The statutory construction we have cited in the brief talks about harmonizing the two statutes. And that's what we feel we have done. We have not interfered in any way with California's process. We have not done anything on that statewide level.

This is an individual, an individual prosecution under an individual set of facts, and it is not inconsistent.

THE COURT: That argument would be stronger if the federal government or Congress had implemented a statute wholly independent of 11362.5, same subject matter, but not

recognizing that it existed, just simply passing it on statute, California doing the same thing.

They don't have to do them at the same time, but in this case, that's not what happened.

11362.5 existed, as did a bunch of other statutes in a bunch of other states, and section 538 was specifically targeting that, at least as far as California is concerned, that particular statute, and saying to the Department of Justice, "Don't interfere with the implementation of that statute because if you want to do it, go ahead. You just can't spend any money doing it."

So I think that the defense has the argument, the better argument on this as to the breadth of section 538. I just don't believe that procedurally, the correct implementation of the statute is that the defendant get two trials by two triers of fact.

I know that Mr. Farkas agrees with the first part of what I said and disagrees with the second part of what I said.

MR. HARRALSON: Your Honor, if I may, I see this more like a motion for summary judgment, where each side comes to the Court with their facts and you determine which are undisputed facts and which are disputed facts that are supported by evidence, and you make a ruling on the law based upon that type of a presentation.

THE COURT: Let me ask you this. As far as the other

defendants, I'm not hearing anything about having any of the other defendants having medical marijuana cards.

MR. HARRALSON: My client had a medical marijuana card and he had a permit for 80 plants. What we said in our joinder, he was similarly situated in that respect with Mr. Lovan.

So if we were to have an evidentiary hearing, we would also be able to present evidence of my client's presence there at the scene, his authorizations, his various -- his medical card and that, but I see this like a motion for summary judgment.

THE COURT: Let me ask this a different way. Is there anybody whose defendant did not have a medical marijuana card?

MR. DRANDELL: On behalf of Mr. Southy, we attached his as an exhibit onto the pleadings.

MS. MOSES: Same with Suphan Saisee.

MR. JONES: Yes.

MR. DRANDELL: I just wanted to pipe in. I think an evidentiary hearing is appropriate because it would be this Court deciding an issue as to whether or not defendants were in compliance with California's Compassionate Use Act, which I do not believe would be an issue for the jury, because I would suspect that the issue of whether or not defendants were complying with Compassionate Use Act would not come in at

trial, and to do it as a hearing after a verdict, that seems like closing the barn doors after the cows have gone.

THE COURT: That's a legal issue. It would not come before the jury.

What would come before the jury is a finding of how many marijuana plants were involved. I'm not -- I don't remember what the numbers are on any of the defendants other than Mr. Lovan, and his is 99.

MR. HARRALSON: My client has 80, your Honor. That's how many he was growing.

THE COURT: Whatever it was, whatever that number is, there would have to be a finding by the trier of fact as to each defendant, how many marijuana plants did you have.

If they had a finding that they possessed marijuana plants pursuant to the allegations, and it was one more plant than the prescription allowed, this is not -- this doesn't come into --

MR. FARKAS: But, your Honor, what's the alternative? What if, say, we go to trial and they find that my client had 99 plants or fewer? What's our remedy for violation of section 538?

THE COURT: Your remedy is that you --

MR. FARKAS: Do I get Mr. Rooney's paycheck for the trial?

THE COURT: Your remedy is a dismissal pursuant to

this argument.

MR. JONES: Your Honor, may I address --

THE COURT: You are not going to be entitled to get money back that the government expended unlawfully if they did.

MR. FARKAS: But to me, this section speaks in terms of that the government cannot do this. Just as the double jeopardy clause says the government cannot try someone twice for the same offense, the government cannot try someone for a medical marijuana case.

And that needs to be determined before the trial. In fact, before, I would say, if this was a genesis of the case, before the indictment, because they are expending resources to, as your Honor acknowledged, to interfere with California's Compassionate Use Act, which is a comprehensive statutory scheme to allow for Mr. Lovan and other patients to use marijuana.

THE COURT: We all understand the argument. It's clear. And I think the record is clear of what the argument is.

I am just simply saying that I believe that the appropriate mechanism for you to determine whether or not you are entitled to a dismissal is after the trier of fact makes their determination.

And it is not as though you are going to give up the

argument if you go to trial. As a matter of fact, you are certainly not giving up the argument.

MR. FARKAS: Then --

MR. JONES: Your Honor, could I be heard regarding the Court's comment regarding the number of plants?

THE COURT: Sure.

MR. JONES: The -- there is a section under 11362.5, 11362.775, regarding cooperatives. And there are a long line -- there are a number of cases, recent cases, which deal with the cooperatives and collectives.

And it is not a defense we could present in federal court, but it's certainly one we could present in state court. And these cases are reversals in almost every -- in Second District, two in the Fourth, one recent in the Fifth, two were in 2015, where the courts, state courts declined to give instructions on cooperatives and collectives.

And the issues involved individuals who were actually cultivating more than the number of plants that they were allowed, but because they were in a cooperative and collective, and you didn't have to participate in the actual cultivation; someone else could be doing it for you, so the number of plants, the size of the operation, what someone's role was in the cooperative or collective, there have been four recent reversals where state courts declined to give those instructions, and said they are entitled to an

instruction on that. It doesn't matter the size or the formality of the membership.

Here we have Mr. Khouthong, for example, was in a plot where there were 929 plants. There were 21 people found on this property. Only five were arrested, but there were numerous people growing marijuana here, and there was sub plots.

Now, the cooperative and collective defense is not available federally. The Grand Jury doesn't even look at, well, was this a cooperative? Was this a collective? They didn't look at that.

We are not going to be able to present that as a defense. We are not going to get a jury instruction on it, but in state court we could. And all you have to do is raise a reasonable doubt in state court now to show a cooperative or collective.

And one individual in one of these cases had previously been charged. The Court instructed on cooperative and collective. He was acquitted. Then he was charged again separately. They declined the instruction. He was convicted, and that conviction was reversed.

My point is we really won't have the opportunity to present the defenses we would have in state court, and I think that is impacted by 538 because it is saying don't expend money, and I agree with the Court, that -- and I think the

Attachment A in Mr. Lovan's motion is right on point.

I think the dissenters, sometimes maybe they express themselves overzealously, but in this case, I think Mr. Rooney's quoting of those dissenters is accurate, particularly in light of Attachment A, that the purpose is to curtail prosecution of cases that wouldn't be prosecuted in state court.

But I would add an addendum to that and say --

THE COURT: I'm not sure if that's true.

MR. JONES: -- if someone would have a defense, the Grand Jury is not looking at that. They are not going to get an instruction on that. They are going down.

And I think the Court is right. Without that kind of ability to raise a cooperative-collective defense, which you can raise in the state, which I have a long -- I could cite these cases.

They are individuals. One guy was transporting a thousand pounds. He wasn't even cultivating and he tried to raise the cooperative-collectives. You don't have to cultivate. If you are just the transporter, you get to raise that defense.

But we are in a different world here. And we are, you know, obviously in a situation where we can't raise what we could in state court. And how does 538 impact that; that's my question.

THE COURT: Well, that's a very good question. I'm not suggesting it's not. I'm not suggesting the question is spurious. But what I am suggesting is perhaps that is the argument or an argument when it is jury instruction time in this case.

If it is -- if you are overruled and you don't get those instructions, it's an appellate issue, obviously.

But still, we do have to recognize that -- at least I have to recognize, you don't have to agree, I'm not suggesting you have to have agree -- but section 538 is telling the Department of Justice that if section 11362.5, the Health and Safety Code in California, is allowing a certain amount of medical marijuana for medical purposes, then they should not interfere. That's what it is saying.

Now, the ramifications that you are talking about and the frustration that you are feeling in talking about it, I understand that part, but you may ultimately be in a situation where, as frustrating as it is, it doesn't make a difference in federal court.

MR. ROONEY: Your Honor, I would like to take perhaps a futile shot again at that "implementing," because one thing that struck me, and the Court is rightly saying, look, Congress is telling the Department of Justice, "Don't interfere with the states as they implement their medical marijuana laws."

But we are in kind of a unique situation here, and I noted in our brief, Fresno County has now prohibited all manufacture. All cultivation of marijuana in this county is now prohibited. It wasn't prohibited by the county at the time of this incident, but right now, it is.

And I think that's illustrative, that the implementation of California's law is not dependent on these individuals' ability to go grow marijuana in Fresno County without the threat of prosecution.

Because, obviously, Fresno County can't overrule the State of California, but their ordinance has been upheld. That's common knowledge to all of us.

I talked to counsel before and asked if we needed a certified copy of the Ordinance, and counsel was gracious enough to say, no, we are all aware of the ongoing litigations in the media.

So what I'm saying is that this prosecution is not interfering with the implementation of California's law. It is obviously very important, very inconvenient, to these defendants to say the least; their liberty is at stake.

But it is not violating 538 because it is not interfering with the State of California's scheme.

THE COURT: Has there been a published Court of Appeal decision on the issue of whether or not a county ordinance can supersede, or at least interfere with, 11362.5?

MR. ROONEY: I don't know the answer to that. I can research it. My understanding is that all the litigation has been at the superior court level. I could be wrong.

THE COURT: See, that's the concern I have when you say that it has been litigated. And there has -- that the county, whether it be the County of Fresno or any other county in the state, any of the 58 counties in the State of California, whether or not they can do that, and whether, then, therefore, it can make a difference.

If there is a case that is binding on trial courts, on District Attorneys, that's different, but I have not read one of those cases yet.

MR. ROONEY: I will research that and let the Court know.

MR. FARKAS: Your Honor, we would note that at the time that this grow was taking place, it was not illegal in Fresno County and, therefore, it would still constitute an interference with the implementation of California's medical marijuana laws.

THE COURT: Again, I wouldn't be going down that road yet because there is nothing to indicate to me that a county can interfere with 11362.5 by filing and by implementing an ordinance.

MR. FARKAS: Your Honor, if I can address your point as to having two separate triers of fact. The alternative is

to allow the Department of Justice to use their discretion to sort of go before the Grand Jury and allege facts, where we don't get to participate, that these people are violating federal law, without even mentioning state law.

So this is never something that has gone before a jury. It won't go before a Grand Jury in the future.

THE COURT: You understand, of course, that you wouldn't go to the Grand Jury any more than if the U.S. Attorney's Office were moving forward with a complaint, at least initially, it wouldn't make any difference whether it was against the California law. That's not what 538 is talking about. 538 is simply talking about spending funds.

MR. FARKAS: To me what 538 really does is it removes discretion from the U.S. Attorney's Office to determine whether the prosecution violates or impedes the implementation of California's medical marijuana law.

THE COURT: The same statement that I made about Congress's ability to say what they mean.

MR. FARKAS: To me --

THE COURT: -- which goes in your favor. It goes against you in this instance because if Congress meant to say that, they certainly could have and didn't.

MR. FARKAS: To me, your Honor, they are saying that with money. They are saying that with one of their greatest powers, which is funding the Department of Justice. They said

here, Eric Holder and the rest of the U.S. Attorneys, you can have $27.4 billion, but don't spend it on prosecuting medical marijuana cases, don't interfere with the Compassionate Use Act and these other states medical marijuana acts. That's what this says.

THE COURT: And still, you have to realize that the only way for us to determine in your case or any other case whether or not it is violating, violative of that, whether it is standing in the way of implementing California's medical marijuana, is to have factual findings by the trier of fact to see, and we don't have that. That's the one thing we don't have.

MR. HARRALSON: Your Honor, I think this is an opportunity for the Court to step forward and establish a procedure. And that procedure would, like I said, by way of summary judgment. We present our facts, admissible facts by declaration or evidentiary. The government presents their facts by evidentiary facts presented to the Court.

If there is a disputed fact, then it goes to trial. If there are undisputed facts, then the Court makes a determination based upon undisputed facts.

THE COURT: There are going to be disputed facts. We certainly know that.

MR. HARRALSON: Well, there may be, but there will be disputed allegations. What the government would be required

to do is -- we would be required to present facts supported by evidence that our clients were operating within the California Compassionate Care Act.

The government would then be able to present facts by evidence, not by allegation, but by evidence to the Court. If the Court finds there are no disputed facts on that issue of whether or not these people were within the California Compassionate Care Act, the Court could then make a legal determination without having to make a factual determination.

The only thing the Court would have to decide is whether or not it is admissible evidence or it is not admissible evidence, or if it is evidence that contradicts the allegations or the allegations are supported by evidence.

THE COURT: Two things. One, I agree with the first statement you made, and that is that the Court should step forward and determine a procedure, how to determine this. And I have. You just don't like it.

Secondly, this is going to be disputed. There is no question it's going to be disputed. There has to be a factual determination made here. It is not a legal determination. The legal determination can only be made after the factual determination has been made.

I'm not a trier of fact. That's why the trier of fact has to make that decision based on conflicting arguments, based on conflicting perceptions, based on conflicting

evidence. We need a trier of fact to make a determination so that I can then make a legal determination.

You are not losing the motion ultimately. You are losing it without prejudice, is what's happening here.

MR. HARRALSON: My concern is, your Honor, that we don't know what the facts are from the government. We know their allegations. We can present facts that our clients intend -- or our clients have evidence that supports their following of the California Compassionate Care Act.

THE COURT: And the government is going to absolutely present circumstantial evidence from which inferences can be and should be drawn, they are going to argue.

So the bottom line here is a fact, a determiner of fact has got to be a part of this decision. Then I can make a legal determination.

MR. HARRALSON: Very well, your Honor. I just thought that would be the appropriate way to handle it, is to sort this out early in the prosecution, establish a manner in which both sides present evidence that -- on the issue of whether or not -- because as we have said --

THE COURT: I'm not saying I wouldn't love to do it.

MR. HARRALSON: The California Compassionate Care Act is not going to be litigated in the trial, so these jurors are not going to decide the facts we are going to be relying on in the motion.

THE COURT: They certainly are going to be determining the facts. They are not going to be determining the law. That's why the 11362.5 will not come before them. That's a legal argument that you are preserving for post verdict, prejudgment.

MR. FARKAS: Your Honor, to me, I still come back to the fact that this is the preventative nature of 538, that this prosecution going forward violates it.

THE COURT: You know, Mr. Farkas, look, I really wish that we had more lawyers in Congress. I really wish that we had more lawyers in Congress who actually had been trial lawyers so that they could understand what they have done and what they do to us when they are not specific and they don't project of, what does this mean? What will happen now?

And that's one of the problems here. I think I know what they intended in 538. And what I think they intended is not what Mr. Rooney is arguing. It is what you are arguing.

But I just can't do what you are asking me to do in the way you are asking me to do it.

And what I tried to do here, I have done my best to allow both sides, all sides to lay the record, to make it clear, and I have tried not to hold back and just make general statements so that the Ninth Circuit can only guess what I meant.

I have tried to be very specific so the Ninth Circuit

will know exactly what I meant and exactly what I ruled. I don't know what else I can do.

MR. FARKAS: I appreciate the difficulty that this Court is in. I do think that, you know, Congress could have used different language, but I think we have the language that we have, and I think your Honor and I and the Court and I are on the same page as to what it means.

I would just note, I understand that the Court is going to go -- to dismiss this without prejudice.

THE COURT: No, I'm going to deny the motion --

MR. FARKAS: Deny without prejudice.

But this Court makes findings of fact in furtherance of findings of law all the time. If Mr. Lovan had filed a motion saying, "Hey, they didn't read me my Miranda rights," and the officer gets up there and says, "I read him his Miranda rights." Mr. Lovan gets up there and says, "Hey, no, he didn't."

Your Honor would have to make a credibility determination, a factual determination, and apply that to the law.

And I don't see this as any different, your Honor.

THE COURT: The reason this is different is because you are asking me to make the very same determination factually and then, ultimately, legally because of that factual determination that the whole trial is intended to do.

MR. FARKAS: And, again, your Honor, our position is this is not a guilty or innocent determination. We are requiring a compliance or noncompliance determination.

THE COURT: And I understand your argument is one different from the other, but from a practical standpoint, it is exactly the same thing.

Anything else?

MR. FARKAS: Nothing further, your Honor. I would note that, maybe this is more appropriate once the Court rules, but we believe we have a right to appeal this to the Ninth Circuit immediately.

So I'm not sure how that would affect the trial date, which is set for late April.

THE COURT: Are you going to do it?

MR. FARKAS: Yes, your Honor. Yes.

MR. ROONEY: I don't know. Obviously, the government is going to disagree, but --

THE COURT: No, I'm not asking you to agree, but if they are going to go up on a writ, don't you agree that we ought to have this determined before we go to trial?

MR. ROONEY: I don't know -- I don't even want to take a position there. I think once Mr. Farkas files a notice of appeal, doesn't this Court lose jurisdiction?

THE COURT: It is not a notice of appeal he is filing. He would be filing a writ. And no, it does not put a

stay on everything. They can request a stay and the Ninth Circuit can issue the stay.

MR. FARKAS: I haven't, your Honor, I haven't decided for the record whether it would be a notice of appeal or a writ. I believe this might be the type of collateral order that is appealable to the Ninth Circuit immediately.

As I said, we are asking for an injunction.

THE COURT: Do me a favor. Whatever you file, if you want to put a stay on the trial, ask for it. Ask the Ninth Circuit for it.

MR. FARKAS: We will, your Honor.

THE COURT: And we will see what they do. Fair enough?

MR. ROONEY: That's good. I will talk with counsel and see where we stand.

And I assume Mr. Farkas is ordering the transcript, I would suspect, if he is filing an appeal.

MR. FARKAS: That's correct, your Honor.

THE COURT: Okay.

MR. JONES: My client is in a little different position. We had set his change of plea before 538 came down, and I kept it on as a change of plea for later this month.

THE COURT: Well, you can go forward with a change of plea and preserve, as long as it doesn't -- as long as it doesn't affect the 11(c) agreement.

You know, if the government says, no, that that is part of the 11(c) agreement, that you can't preserve that, then, of course, you have to make a decision.

MR. ROONEY: I will think it over and talk with counsel. I don't see, as a practical matter, I don't see any utility in going to trial if we have got something before the Ninth.

I don't see any utility in making Mr. Jones go to trial to -- just to preserve a right to appeal.

MR. JONES: My client, we worked pretty hard on a resolution, and but this issue would affect it --

THE COURT: Absolutely.

MR. JONES: -- for the reasons I said. He made some admissions concerning this larger plot, but it was a collective-cooperative situation. And so I would like, if it -- there is further review, I would like to hold off.

Could I set the change of plea maybe for the date of the trial and get a stay on that? Would that be out of line? Or just vacate the change of plea for now?

MR. ROONEY: Let me just talk with counsel before --

THE COURT: Chat with him. Let me know what you want to do. I obviously am not going to say, "Oh, no. You are going with a change of plea, period."

MR. JONES: Thank you.

THE COURT: All right.

MR. DRANDELL: Otherwise, we are set for TC on April 14, and that is a day the Court wanted the clients to be present. My client is coming from out of state, on the other side of the country.

THE COURT: Let's see what Mr. Farkas does in life here. In other words, if he files his, just chat with Mr. Rooney and see if you can't all agree. I suspect you will be able to agree on what to do here.

MR. ROONEY: Your Honor, do we have the ruling now? Is the oral ruling the ruling? There is not going to be a written order to follow or anything?

THE COURT: I'm not planning on it. To me, it was too involved, and I want the entirety of the record to show what the ruling was and why.

MR. ROONEY: Okay. That's fine. I just want it so we know where we are timing wise, et cetera.

THE COURT: You are. This is the ruling.

MR. ROONEY: Thank you.

(The proceedings were concluded at 10:59 a.m.)

I, PEGGY J. CRAWFORD, Official Reporter, do hereby certify the foregoing transcript as true and correct.

Dated: 12th of March, 2015 /s/ Peggy J. Crawford
PEGGY J. CRAWFORD, RDR-CRR